UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHARLES ARCHEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-03541-SEB-MPB |
| | ) | |
| MS. PURDUE, | ) | |
| MR. KING, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS'
UNOPPOSED MOTION FOR SUMMARY JUDGMENT AND
DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Charles Archey, a state prisoner, alleges that Defendants NP Elaine Purdue and Mr. Michael King violated his Eighth Amendment rights when they stopped his insulin shots. Dkt. 10. Defendants dispute this claim and seek summary judgment. Mr. Archey did not respond. Because there is no evidence that Defendants were deliberately indifferent to Mr. Archey's serious medical needs, Defendants' motion for summary judgment, dkt. [78], is **GRANTED.**

**I. Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

1

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. In this case, Defendants have met that burden through their unopposed motion for summary judgment.

Mr. Archey failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); see S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

## II. Undisputed Facts

Mr. Archey filed this lawsuit alleging that NP Purdue denied him insulin injections from July 2 of 2019, to July 6 of 2019, and that Mr. King failed to properly respond to his grievances on the issue. Dkt. 10.

### A. Diabetes Treatment

Mr. Archey was first diagnosed with diabetes in 2018. Dkt. 78-1 at 20: 22-25, 21: 1-2. Mr. Archey did not know that he was diabetic before arriving at Pendleton Correctional Facility. *Id.* at 21: 8-9.

In November of 2018, Mr. Archey was not receiving daily insulin injections. Dkt. 78-2 at p. 4; dkt. 78-3, ¶ 12. Instead, Mr. Archey had an order to receive Humulin R insulin only when his accuchecks were greater than 150. *Id.* If Mr. Archey's blood sugar check was less than 150, no insulin was provided. *Id.*

On November 30, 2018, NP Purdue saw Mr. Archey at a provider visit. Dkt. 78-2 at pp 2-4; dkt. 78-3, ¶ 8. At this visit, Mr. Archey's diabetes was discussed, and it was noted that he was doing well on his diet, and that his evening blood sugar checks were between 82 and 156. Dkt. 78-2 at p. 2; dkt. 78-3, ¶ 9. His hemoglobin A1C was 5.6 in August of 2018. The A1C test shows the average blood sugar levels for the previous three months by measuring the percentage of blood sugar attached to the oxygen-carrying protein in red blood cells. Dkt. 78-3, ¶ 10. The normal range for A1C levels is between 4 and 5.6. *Id.*, ¶ 11.

On May 1, 2019, Mr. Archey was seen at a chronic care visit with Dr. Paul Talbot. Dkt. 78-2 at pp. 5-8. Per Dr. Talbot's chronic care note, Mr. Archey's accuchecks were at 100 which evidenced some degree of diabetic control. *Id.* at p. 5; dkt. 78-3, ¶ 14. As of the May 19, 2019, chronic care visit, Mr. Archey was not receiving daily insulin injections. Dkt. 78-2 at pp. 8; dkt. 78-3, ¶ 15. Instead, an order remained for Humulin R insulin to be given only when accuchecks were greater than 150. *Id*. If Mr. Archey's blood sugar check was less than 150, no insulin was to be provided. *Id*.

On June 24, 2019, Mr. Archey was seen at a nurse visit with Jenna R. Terry, RN. Dkt. 78-2, pp. 9-10; dkt. 78-3, ¶ 16. Per nurse Terry's medical note, Mr. Archey was seen for a blood sugar level of 56. *Id.* Mr. Archey was not provided insulin for his low blood sugar on June 24, 2019, but was provided one tube of glucose gel. Dkt. 78-2, p. 10; dkt. 78-3, ¶ 17. After taking the glucose gel, Mr. Archey's blood sugar returned to 133. *Id.*

3

On June 26, 2019, NP Purdue saw Mr. Archey at a provider visit. Dkt. 78-2 at pp. 11-12; dkt. 78-3, ¶ 18. At this visit, Mr. Archey's diabetes was discussed, and it was noted that for the month of June in 2019, Mr. Archey's blood sugar levels were all under 110. Dkt. 78-2 at p. 11; Dkt. 78-3, ¶ 19. At this time, Mr. Archey continued to have an as-needed insulin order in place and his blood sugar readings determined whether or not insulin was provided. Dkt. 78-1, 44:10-19. When Mr. Archey's blood sugar levels were below 150, insulin was not provided. Dkt. 78-3, ¶ 36. Mr. Archey had a stable A1C and reported control over his diet. Dkt. 78-3, ¶ 37. Based on Mr. Archey's medical history, NP Purdue discontinued the as-needed insulin order. Dkt. 78-2 at p. 11; dkt. 78-3, ¶ 20. Mr. Archey remained on a diabetic diet after the discontinuation of his insulin order on June 26, 2019. Dkt. 78-3, ¶ 38.

On July 17, 2019, NP Purdue saw Mr. Archey at a provider visit. Dkt. 78-2 at pp. 13-15; dkt. 78-3, ¶ 21. During this visit, Mr. Archey's diabetes was discussed, and Mr. Archey reported that his blood sugar became elevated while on lockdown. Dkt. 78-2 at p. 13; dkt. 78-3, ¶ 22. Mr. Archey reported receiving glucose gel from medical staff when his blood sugars dropped into the 50s. Dkt. 78-3, ¶ 23. A review of Mr. Archey's A1C history showed an A1C of 5.6 in June of 2019, which was still considered normal. Dkt. 78-2 at p. 13; dkt. 78-3, ¶ 24. However, based on Mr. Archey's representations his request for an as-needed insulin prescription, the Humulin R order was reinstated. Dkt. 78-2, pp. 14-15; dkt. 78-3, ¶ 25. The order was placed only for times when Mr. Archey's blood sugar levels were above 150. *Id.* If Mr. Archey's blood sugar levels were below 150, insulin was not provided. *Id.*

Low blood sugar is also known as hypoglycemia. Dkt. 78-3, ¶ 26. Symptoms of low blood sugar include dizziness, increased heart palpitations, weakness, seizures and, in extreme circumstances, death. *Id.*, ¶ 27. Hypoglycemic individuals should not be treated with insulin as the

4

insulin can cause blood sugar levels to drop further. *Id.*, ¶ 28. If a patient presents with low blood sugar, they can be treated with glucose gel which contains carbohydrate calories. *Id.*, ¶ 29. Glucose gel was kept on site by medical staff at PCF for instances when a patient's blood sugar dropped. *Id.*, ¶ 30. Glucose gel did not require a separate prescription. *Id.*, ¶ 31.

If a patient presents with high blood sugar and there is not a present order for insulin, medical staff could contact the on-site provider to request a dose of insulin be provided. Dkt. 78-3, ¶ 32. Only a provider could approve the usage of insulin. *Id*, ¶ 33.

**B. Grievance History**

In June and July of 2019, Health Services Administrator (HSA), Mr. King was working at Pendleton Correctional Facility. Dkt. 78-4, ¶ 5. In his capacity as HSA, Mr. King regularly responded to informal and formal grievances that were related to medical care and/or medical employees. *Id.*, ¶ 9. Once a grievance was received, Mr. King reviewed the offender's recent, relevant medical records to better understand the nature of the offender's complaints. *Id.*, ¶ 10. If necessary, Mr. King relayed the offender's complaints to the treating providers for discussion as to the nature of the medical treatment provided and the reason for the addition or discontinuation of specific medications. *Id.*, ¶ 11.

Mr. Archey testified that he sued Mr. King because "he failed to help me when I asked him, because I was told that he was the one that could fix everything, and he said he wasn't going to do nothing. He was just doing whatever Purdue said." Dkt. 78-1, 64: 17-21.

Mr. Archey does not recall the first day that he contacted Mr. King regarding his insulin complaints, however, he recalls speaking to him in-person at the medication window. *Id.*, 65: 1-13. Mr. Archey recalls showing Mr. King a request slip regarding shoes but verbally complaining about the insulin being stopped. *Id.*, 65: 14-25.

Mr. King advised Mr. Archey to "send him a request" and stated that he would look into Mr. Archey's concern as he "didn't know right offhand why [the insulin] was stopped[.]." *Id.,* 65: 15-20.

On July 6, 2019, Mr. Archey submitted a "Request for Interview" indicating that he was submitting a grievance on medical for taking him off his "shots." Dkt. 78-4, ¶ 16.

Mr. King responded to Mr. Archey's "Request for Interview" indicating that "insulin was d/c'd due to blood sugars being under 110." Dkt. 78-4, ¶ 17. This response was consistent with Mr. Archey's recent medical records. *Id.*, ¶ 18. Specifically, the medical note dated June 26, 2019, indicated that NP Purdue discontinued insulin due to blood sugars in June 2019 all being under 110. *Id.*, ¶ 19. Based upon his review of Mr. Archey's medical records, Mr. King did not have concerns about the medical care provided. *Id.*, ¶ 20.

Mr. King is a registered nurse and was a registered nurse in June and July of 2019. Dkt. 78-4, ¶¶ 2, 12. Mr. King never had the authority to order or prescribe medication to an offender. *Id.*, ¶ 13. He never had the authority to place an offender on insulin. *Id.*, ¶ 14. If Mr. King had concerns about the medical care being provided to an offender, he escalated those concerns to the Regional Medical Director. *Id.*, ¶ 15.

### III. Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate

indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

For the purposes of this motion, the Court assumes that Mr. Archey's diabetes is a serious medical need. To survive summary judgment then, Mr. Archey must show that Defendants acted with deliberate indifference—that is, that he or she consciously disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Mr. Archey "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*. "Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (internal citations omitted). The Seventh Circuit has "held that a jury can infer deliberate indifference when a treatment decision is 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Id.* (quoting *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *Id.* at 241-42.

**A. NP Purdue**

Mr. Archey alleges that NP Purdue was deliberately indifferent to his diabetes when she discontinued his insulin prescription. NP Purdue disputes this allegation. She argues that there is no evidence that she was subjectively indifferent to Mr. Archey's diabetes. Instead, the undisputed

record reflects that NP Purdue's decision to discontinue his as-needed insulin prescription was a result of her medical judgment. *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (explaining that courts "defer to a medical professional's treatment decision unless no minimally competent professional would have so responded under those circumstances.") (cleaned up). In particular, on June 26, 2019, NP Purdue considered that Mr. Archey's blood sugar readings for the month of June were all under 110, his A1C was within normal limits, and he reported control over his diet. Based on this relevant medical evidence, NP Purdue made the decision to discontinue the as-needed prescription.

Later on July 17, 2019, when Mr. Archey reported to NP Purdue that his blood sugar levels had become elevated while the facility was on lock down, she listened to Mr. Archey's complaints and reinstated the as-needed insulin order.

NP Purdue's treatment decisions cannot support an Eighth Amendment violation where the record demonstrates that NP Purdue exercised her medical judgment in making those decisions. *See Lockett*, 937 F.3d at 1024–25. In the absence of any evidence of deliberate indifference, NP Purdue is entitled to judgment as a matter of law.

**B. Mr. King**

Mr. King seeks summary judgment because there is no evidence that he was deliberately indifferent to Mr. Archey's diabetes or need for insulin. Mr. King formulated a reasonable response to Mr. Archey's request for interview and determined that there was a medical reason for the action taken. Mr. King reviewed Mr. Archey's recent medical records and noted that NP Purdue discontinued the insulin for medical reasons, as Mr. Archey's blood sugar levels were consistently under 110. In addition, Mr. King did not have the authority to prescribe insulin to the Mr. Archey and he was entitled to rely upon NP Purdue's medical treatment decisions. *Giles v. Godinez*, 914

8

F.3d 1040, 1049 (7th Cir. 2019), cert. denied, 140 S. Ct. 50 (2019). Under these circumstances, no reasonable jury could find that Mr. King acted with deliberate indifference when responding to Mr. Archey's complaints and he is entitled to judgment as a matter of law.

## IV. Conclusion

The defendants' unopposed motion for summary judgment, dkt. [78], is **GRANTED.** Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 6/24/2022

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

CHARLES ARCHEY
109037
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Heather Terese Gilbert
CASSIDAY SCHADE LLP
hgilbert@cassiday.com

Marley Genele Hancock
CASSIDAY SCHADE LLP
mhancock@cassiday.com

Marilyn A. Young
CASSIDAY SCHADE LLP
myoung@cassiday.com